John E. NEWMAN

v.

SHEARSON, HAMMILL & CO., INCORPORATED.

Civ. A. No. SA74CA135.

United States District Court,
W. D. Texas,
San Antonio Division.

Oct. 24, 1974.

J. Burleson Smith, San Antonio, Tex., Stephen R. Steinberg, New York City, for plaintiff.

George H. Spencer, San Antonio, Tex., Russel H. Beatie, Jr., New York City, for defendant.

## MEMORANDUM OPINION

SPEARS, Chief Judge.

Plaintiff, an individual who has never been a member or allied member of the New York Stock Exchange ("NYSE"), brought this action against defendant, a registered broker-dealer member of NYSE alleging numerous violations of the registration and antifraud provisions of the Securities Act of 1933, 15 U.S.C. § 77a et seq. (the "1933 Act"), the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. (the "Exchange Act"), the Rules of the New York Stock Exchange, and the Texas Securities Act, Tex.Rev.Civ.Stat.Ann. Art. 581–1 et seq., (the "Texas Act"). Defendant has filed a motion to stay this action and to order arbitration pursuant to the United States Arbitration Act, 9 U.S.C. § 1 et seq.

The securities involved herein arose out of an investment arrangement whereby defendant agreed to pay plaintiff interest on the value of certain securities and cash (the "Collateral") owned by plaintiff, provided that plaintiff would pledge the Collateral to defendant under the terms of contemporaneous agreements. Under this arrangement plaintiff retained legal and beneficial ownership of the Collateral, had the benefit of any increase in the value of the Collateral, and bore the risk of any decrease in the value of the Collateral. In addition, plaintiff could direct the sale of securities included in the Collateral, and direct the purchase of new securities with cash included in the Collateral. This arrangement was documented by the execution by plaintiff of a senior secured demand note, and a senior secured demand note collateral agreement.

In 1963 when plaintiff first entered into this arrangement with defendant, defendant was not incorporated, but operated as a partnership. Prior to entering into this arrangement, plaintiff was required to sign a form entitled "Allied Member or Non-Member Application" which recited that he agreed to abide by the Constitution and Rules of the NYSE.

In 1964 defendant incorporated, and required plaintiff to sign another such application which contained language almost identical to the first form; however, the second form contained the additional provision that "this pledge [is] to become effective in the event of, and forthwith upon, my approval as a stockholder of a member corporation." There is no evidence that plaintiff ever owned any stock in defendant, or that he was ever approved as a stockholder of a NYSE member corporation.

On February 1, 1970, plaintiff executed a Senior Secured Demand Note (the "1970 Note") payable to defendant in

the principal amount of $1,400,000, and a Senior Secured Demand Note Collateral Agreement (the "1970 Collateral Agreement"), under which plaintiff pledged the Collateral to defendant for four (4) years to secure the 1970 Note. The 1970 Collateral Agreement provided that, on maturity, defendant would return the Collateral and the 1970 Note to plaintiff. The 1970 Collateral Agreement further provided that any controversy arising thereunder would be settled by arbitration pursuant to the Constitution of the NYSE.

On or about May 11, 1973, pursuant to the terms of the 1970 Collateral Agreement, plaintiff gave written notice of termination to defendant, and demanded that the 1970 Note and the Collateral be returned to him on February 1, 1974.

On or about July 27, 1973, plaintiff withdrew his demand for return of the 1970 Note and the Collateral, and executed a letter agreement extending the maturity date of the 1970 Note and the 1970 Collateral Agreement to June 30, 1974.

On or about March 11, 1974, at the request of defendant, plaintiff executed and delivered to defendant a new Senior Secured Demand Note dated March 8, 1974 (the "1974 Note"), payable to defendant in the amount of $400,000, and defendant agreed to return to plaintiff all of the Collateral not required to secure the 1974 Note, on June 1, 1974. On March 11, 1974, plaintiff also executed and delivered a new Senior Secured Demand Note Collateral Agreement dated March 8, 1974 (the "1974 Collateral Agreement"), which contained the same provision relating to arbitration as was contained in the 1970 Collateral Agreement.

On May 30, 1974, defendant called plaintiff's 1970 Note, and made written demand upon plaintiff for payment of the full amount thereof ($1,400,000), and threatened to liquidate a sufficient amount of the Collateral in order to pay such note. This action was commenced shortly thereafter.

■ It is true that there exists a strong public policy in favor of arbitration. *Trafalgar Shipping Co. v. International Milling Co.*, 401 F.2d 568 (2d Cir. 1968). Further, the United States Arbitration Act (9 U.S.C. § 1 et seq.) provides that written provisions to settle controversies by arbitration contained in contracts evidencing a transaction involving commerce shall be valid, irrevocable and enforceable. However, notwithstanding the public policy in favor of arbitration, it is clear that the 1933 Act and the Exchange Act were designed to protect investors, such as plaintiff, and that an agreement to arbitrate controversies concerning alleged violations of the federal securities laws is invalid and unenforceable under those Acts.[1]

The invalidity of such agreements to arbitrate was enunciated by the Supreme Court in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). In that case involving violations of the 1933 Act, the Court said:

> The words of § 14 . . . void any 'stipulation' waiving compliance with any 'provision' of the Securities Act (of 1933). This arrangement to arbitrate is a 'stipulation,' and we think the right to select the judicial forum is the kind of 'provision' that cannot be waived under § 14 of the Securities Act (of 1933). *Id.* at 434–435, 74 S. Ct. at 186.

---

1. Section 14 of the 1933 Act provides:
"Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this title or of the rules and regulations of the Commission shall be void." 15 U.S.C. § 77n. Section 29(a) of the Exchange Act provides:

"Any condition, stipulation, or provision binding any person to waive compliance with any provision of this title or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void." 15 U.S.C. § 78cc(a).

Continuing, the Court said:

> Recognizing the advantages that prior agreements for arbitration may provide for the solution of commercial controversies, we decide that the intention of Congress concerning the sales of securities is better carried out by holding invalid such an agreement for arbitration of issues arising under the Act. *Id.* at 438, 74 S.Ct. at 188.

The reasoning and logic of the *Wilko* holding are compelling and have been consistently followed in subsequent cases involving the 1933 Act, as well as cases involving the Exchange Act. Stockwell v. Reynolds & Co., 252 F.Supp. 215 (S.D.N.Y.1965); Shapiro v. Jaslow, 320 F.Supp. 598 (S.D.N.Y.1970).

Defendant's argument that *Wilko* was overruled by Scherk v. Alberto-Culver Co., 417 U.S. 506, 94 S.Ct. 2449, 41 L. Ed.2d 270 (1974), is incorrect as that case simply carved out a narrow exception to the *Wilko* holding, and is applicable only to international transactions.

Defendant's contention that the *Wilko* holding should not be applied to the instant case is based upon two arguments: (1) that plaintiff is a sophisticated investor and, as such, he is not afforded the protection of *Wilko*, and (2) that Section 28(b) of the Exchange Act requires arbitration where a non-member has agreed to be bound by the Constitution of the NYSE.

The cases cited by defendant in support of its argument that sophisticated investors are denied protection of the federal courts, are Alco Standard Corp. v. Banalal, (1972–73 Transfer Binder) 345 F.Supp. 14 (E.D.Pa.1972) and GCA Corp. v. Coler, (1971–72 Transfer Binder), CCH Sec.L.Rep. ¶ 93,339 at 91,814 (S.D.N.Y.1972). These cases, however, are readily distinguishable. In the *Alco* case, no members of an exchange were involved and the Court found that there had been an arm's length transaction between two sophisticated investors, but, more importantly, Alco wrote the agreements and chose to include the arbitration provision. In the instant case, the facts are exactly the opposite. Plaintiff was required to sign standard forms, and no bargaining was permitted on the question of arbitration. The Court sent the parties to arbitration in the *GCA* case, because there was no broker-dealer involved, and because of the insufficiency of the federal securities' claims.

█ The federal securities laws do not distinguish between sophisticated and unsophisticated investors, and the protection afforded by their antifraud and registration provisions are designed for all investors, whether sophisticated or unsophisticated. Stier v. Smith, 473 F.2d 1205 (5th Cir. 1973).

█ Defendant's second argument that the *Wilko* holding does not apply where a party agrees to be bound by the rules of the New York Stock Exchange is based upon Section 28(b) of the Exchange Act, which provides that:

> Nothing in this title shall be construed to modify existing law (1) with regard to the binding effect on any member of any exchange of any action taken by the authorities of such exchange to settle disputes between its members, or (2) with regard to the binding effect of such action on any person who has agreed to be bound thereby, or (3) with regard to the binding effect on any such member of any disciplinary action taken by the authorities of the exchange as a result of violation of any rule of the exchange, insofar as the action taken is not inconsistent with the provisions of this title or the rules and regulations thereunder. 15 U.S.C. § 78bb(b).

Section 28(b) is inapplicable to the instant case because (1) plaintiff is not a member of any exchange; (2) the record herein fully supports this Court's finding that plaintiff did not, with full knowledge and understanding of the consequences, agree to bind himself to arbitrate any disputes; and (3) this case does not involve any action taken by authorities of an exchange to settle disputes. Therefore, Section 28(b) can have no binding effect upon plaintiff.

The construction of Section 28(b) urged by defendant is directly contrary to the spirit and language of *Wilko,* and the many cases that have followed *Wilko.* The purpose of Section 28(b) is to promote the self-regulatory functions of the exchanges. Axelrod & Co. v. Kordich, Victor & Neufeld, 451 F.2d 838 (2d Cir. 1971). That purpose is not served by excluding investors such as plaintiff from the federal courthouse.

Further, neither the 1963 nor the 1964 application forms signed by plaintiff mentioned arbitration, and it would be inequitable to hold that by signing those documents, plaintiff knowingly and voluntarily agreed to be bound by arbitration. Danford v. Schwabacher, 342 F.Supp. 65 (N.D.Cal.1972), appeal dismissed, 488 F.2d 454 (9th Cir. 1973).

Finally, it is important to note the provisions of the Constitution of the NYSE which pertain to arbitration. Article VIII, Section 6 thereof, recites in pertinent part:

> Any controversy between a non-member and a member or allied member or member firm or of such member, allied member, member firm or member corporation or the dissolution of a member firm or a member corporation shall, *at the instance of such non-member*, be submitted for arbitration as provided hereinbelow . . .
> (Emphasis added)

The Constitution only requires arbitration in controversies involving non-members "at the instance of such non-member". It is clear that plaintiff in this action does not seek arbitration and, therefore, has not submitted himself to the provisions of the Constitution of the NYSE.

In summary, plaintiff, as a member of the investing public, is entitled to the protections provided by the federal securities laws, including the choice of forum.

Therefore, defendant's motion for stay and to order arbitration is hereby, in all things, denied.