**Richard DE LANCIE, Plaintiff-Appellant,**

v.

**BIRR, WILSON & CO., a California Corporation, Brian Newman, and Don Mayo, Defendants-Appellees.**

No. 79–4355.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 1981.

Decided June 26, 1981.

William H. Bachrach, Oakland, Cal., for plaintiff-appellant.

James S. Barber, Chicago, Ill., argued for defendants-appellees; Edward Fisch, Birr, Wilson & Co., R. Stewart Baird, Jr., Bronson, Bronson & McKinnon, San Francisco, Cal., Arvey, Hodes, Costello & Burman, Chicago, Ill., on brief.

Before SNEED, TANG and NORRIS, Circuit Judges.

TANG, Circuit Judge.

Richard De Lancie appeals from the district court's order staying his securities fraud action pending arbitration of the dispute. The major question is whether De Lancie is bound under Pacific Stock Exchange (PSE) rules to arbitrate his federal claims because defendant Birr, Wilson & Co. (Birr Wilson) is a PSE member and De Lancie became an associated person of that Exchange during the period in which the alleged securities violations were occurring. De Lancie claims he did not waive his right to bring a federal suit by virtue of his associated membership. We agree, and reverse the district court order.

## I

De Lancie maintained a discretionary trading account with Birr Wilson from October 1976 through March 1978. Defendant Brian Newman, supervised by defendant Mayo, managed the account, primarily buying and selling option contracts.

In late 1977, De Lancie, Newman and a third person formed a partnership named Dever Associates. The Securities and Exchange Commission licensed Dever Associates as a securities dealer-broker, and on December 27, 1977, Dever became a member firm of the PSE.[1] Dever Associates' "member firm" status was acquired in the name of Brian Newman, who remained a Dever partner until February 15, 1978. De Lancie, as a partner of a member organization, then, became an "associated person" of the PSE. See Article V, § 7 Constitution, Pacific Stock Exchange Guide (CCH) ¶ 1376. Birr Wilson is also a member firm of the PSE.

De Lancie alleges, inter alia, that from October 1976 through January 1978[2] Birr Wilson, through its agents, violated various federal securities laws by fraudulently inducing him "to purchase and sell certain option contracts, consisting of calls and the sale of calls without the underlying securities or 'naked' and excessively traded or 'churned' his account . . . ." The churning of the account resulted in a turnover ratio in excess of 30 times during the period through March 1978, and Birr Wilson earned over $80,000 in commissions from the transactions. In this period De Lancie's initial account, valued in excess of $100,000, was depleted by more than $100,000.

Claiming violation of the Security Exchange Act of 1934 and breach of various state created duties, De Lancie brought suit in district court. Birr Wilson moved, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 2, 3, and Federal Rule of Civil Procedure 12(b)(1), 28 U.S.C. § 12(b)(1), to stay all proceedings pending arbitration of the dispute. The district court granted the motion, finding that, as an "associated person", De Lancie was bound by rule XII, section 1(a) of the PSE Rules to arbitrate his claims. De Lancie appeals.

---

1. The record contains some confusion about the actual date Dever joined the PSE. See Appellant's Opening Brief at 4 (Dec. 27); Affidavit of Donald Wetmore (Dec. 27); cf. Affidavit of Richard De Lancie (Dec. 12).

2. It is unclear whether De Lancie is claiming that Birr Wilson's fraudulent conduct occurred only through January 1978 or through March 1978 as well. Compare Appellant's Opening Brief at 3 ("October of 1976 and persisting through January of 1978") with Complaint (breached duties through March 1978).

## II

The district court framed the issue solely as whether PSE rule XII is preempted by the remedies provided by the federal securities laws, and concluded that it is not.

Rule XII, § 1(a) provides:

> Any dispute, claim or controversy between parties who are members, member organizations or associated persons arising in connection with the securities business of such parties shall, at the request of any such party, be submitted for arbitration in accordance with this Rule.

Rules of Board of Governors, Pacific Stock Exchange Guide (CCH) ¶ 5300.

Two provisions of the Securities Exchange Act of 1934 relate to the ability of an exchange to require arbitration of disputes. Section 29(a), 15 U.S.C. § 78cc(a), provides:

> Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void.

While this provision might be interpreted to preclude a binding arbitration rule such as PSE rule XII, section 28(b), 15 U.S.C. § 78bb(b), provides in part:

> Nothing in this chapter shall be construed to modify existing law (1) with regard to the binding effect on any member of any exchange of any action taken by the authorities of such exchange to settle disputes between its members, or (2) with regard to the binding effect of such action on any person who has agreed to be bound thereby . . . .

The district court properly concluded that section 28(b) modifies the effects of section 29(a) to exempt certain arbitration agreements from the invalidating language of that nonwaiver provision. *See, e. g., Bear v. Hayden, Stone, Inc.,* 526 F.2d 734 (9th Cir. 1975) (members of New York Stock Exchange (NYSE) bound by Exchange rules to arbitrate dispute arising while both parties were members); *Axelrod & Co. v. Kordich, Victor & Neufeld,* 451 F.2d 838 (2d Cir. 1971) (nonmember of NYSE may invoke compulsory arbitration rules of Exchange over opposition of member firm); *Brown v. Gilligan, Will & Co.,* 287 F.Supp. 766 (S.D.N.Y.1968) (broker-dealer members of NYSE not exempt from nonwaiver provisions of 1933 or 1934 Securities acts); *cf. Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (section 14 of the 1933 Act, a provision almost identical to section 29(a), bars agreement by a brokerage house customer to arbitrate a future controversy.) The court further held that De Lancie "waived his right to sue in federal court when he voluntarily joined the exchange and agreed to arbitrate 'any controversy between . . . members . . . .' ". In support, the court relied on *Coenen v. R. W. Pressprich & Co.,* 453 F.2d 1209 (2d Cir.), *cert. denied,* 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972).

In *Coenen,* the defendant sold stock for the plaintiff in September 1970. In December 1970, the plaintiff became an allied member of the NYSE and shortly thereafter filed suit alleging that defendant had sold the stock at an unconscionably low price. Finding the NYSE arbitration provision "very broad", the *Coenen* court held the dispute arbitrable notwithstanding the fact that the sale took place before plaintiff joined the Exchange. The plaintiff, the court held, had "agreed to arbitrate '[a]ny controversy between . . . members . . .', with full knowledge that he had a claim against [defendant] and that [defendant] was a Stock Exchange member." *Id.* at 1212.

It appears that the district court misapplied the *Coenen* holding to this case for two reasons. First, contrary to Birr Wilson's contention, the fact that the *Coenen* plaintiff joined the Exchange with full knowledge of his claim appears to be more than "mere" dicta. The *Coenen* court emphasized that it saw "no substantial difference between [its] case and the countless others where parties have agreed to arbitrate an *existing controversy.*" *Id.* (emphasis added). Moreover, in a subsequent case, the Second Circuit noted that "by joining the NYSE with its requirement that members arbitrate disputes, with his *knowledge*

of an *existing dispute* with another member, the plaintiff in *Coenen* waived his right to have his claim determined by a federal court rather than an arbitrator." *Laupheimer v. McDonnell & Co., Inc.,* 500 F.2d 21, 25 (2d Cir. 1974) (emphasis added). It distinguished *Coenen* on the ground that "Appellant Laupheimer at the time he became an officer, a member of the exchange, or a stockholder had no idea that he had been defrauded[;] ... there was no existing dispute ...." *Id.*

▮ Here, the district court concluded that the *Coenen* facts were substantially the same, simply stating:

In the present case, plaintiff had been dealing with defendants for 15 months prior to joining the exchange. When he joined the exchange he should have been aware that potential claims arising out of his dealings with defendants might exist and that his ascribing to the Rules of the Exchange constituted an agreement to arbitrate such disputes.

Apparently the court equated the fact that De Lancie "should have been aware [of] potential claims" with the *Coenen* requirement of "full knowledge" of an "existing claim". Nothing in *Coenen*, nor any other case, however, suggests that merely dealing with a broker, and therefore amassing "po-

tential" claims, is enough to bring premembership disputes under exchange rules. And, the record contains little, if any, additional evidence to support a finding that De Lancie "knew" or "should have known" of the actual controversy with Birr Wilson.[3]

The second way in which the court erred in finding "no substantial difference between the facts in *Coenen* and the [instant] case" was by impliedly determining that the provision construed in *Coenen*, Article VIII, section 1 of the NYSE Constitution, the PSE rule XII were coequal. Such an assumption proves too much.

Commentary .01 to PSE rule XII makes clear that the arbitration provision applies only to those members and associated persons "who were Exchange members at the time the circumstances occurred which gave rise to the controversy." In contrast, the NYSE Constitution contains no such explanatory language and, as discussed *supra*, the *Coenen* court held that Article VIII could be applied to the premembership disputes of members who joined the Exchange "with full knowledge" of the claim.

Here the churning controversy arose from circumstances that occurred before De Lancie became a member, i. e. from October 1976 through December 1978.[4] We there-

---

**3.** De Lancie states in an affidavit that he "was unaware of the losses and transactions which had occurred in [his] securities account with defendant and was unaware that he had any cause of action ...." He further states that had he known "of any claim against Defendant NEWMAN at the time that Dever Associates became a member of the Pacific Stock Exchange [he] would not have had any association in any capacity whatsoever with Defendant ...." *Id.* The only evidence offered to counter that showing was the fact that De Lancie was a businessman who had received confirmation slips of each closed transaction. These facts are not enough to establish knowledge of an existing claim. For example, while the receipt of confirmation slips is sufficient to inform a plaintiff of the specific transactions made, it is " 'not sufficient to put her on notice that the trading of her account was excessive.' " *Mihara v. Dean Witter & Co.,* 619 F.2d 814, 822 (9th Cir. 1980), *quoting Hecht v. Harris Upham & Company,* 430 F.2d 1202, 1210 (9th Cir. 1970).

De Lancie further argues that the district court could not properly find against him on

the record because (1) in ruling on a 12(b)(1) motion, it "is bound to accept as true the allegations of the plaintiff's complaint" or (2) it is unable to resolve factual disputes without an evidentiary hearing. Opening Brief at 23. To the contrary, this court holds that when the jurisdictional issue in a rule 12(b)(1) motion is separable from the merits of the case, as here, ' "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.' " *Thornhill Publishing Co. v. General Telephone & Electronics Corp.,* 594 F.2d 730, 733 (9th Cir. 1979), *quoting Mortensen v. First Fed. Sav. & Loan Ass'n.,* 549 F.2d 884, 891 (3d Cir. 1977); *see also Berardinelli v. Castle & Cooke, Inc.,* 587 F.2d 37 (9th Cir. 1978). To our knowledge, no cases require an evidentiary hearing on a 12(b)(1) motion.

**4.** While it is true that De Lancie's complaint alleges fraudulent conduct occurring at least through January 1978, one month beyond the date on which he became a PSE Associate, *see*

fore hold that PSE rule XII cannot be applied to De Lancie, and he cannot be compelled to arbitrate his federal securities claims. This result is consonant with the rule in this circuit that arbitration is regarded with favor by the courts *except* in situations involving protective legislation, the "most obvious example" being federal securities laws. *Bear v. Hayden, Stone, Inc.*, 526 F.2d 734, 735, 735 n.3 (9th Cir. 1975); *cf. Coenen*, 453 F.2d at 1212 (policy to construe liberally arbitration clauses if particular dispute reasonably contemplated by language).

Because we find that under the facts of this case rule VII does not apply to De Lancie, we do not consider De Lancie's contention that the PSE Constitution and Rules "generally deal with internal rules of the exchange which regulate trading procedures on the exchange" and are not meant to include "external customer-member controversies." Nor do we reach De Lancie's final claim, raised for the first time on appeal, that the record contains no evidence that he signed documents in which he agreed to abide by the PSE Constitution or Rules, and therefore that he is not contractually bound to arbitrate.

REVERSED and REMANDED.

SNEED, Circuit Judge, Concurring in Part Only:

I concur in the result reached by the majority. I also concur in that part of the majority opinion that holds that PSE rule XII is inapplicable to De Lancie "because the churning controversy arose from circumstances that occurred before De Lancie became a member, i. e., from October 1976 through December 1978."

This is sufficient to dispose of this case. It is unnecessary to consider whether the district court's finding that De Lancie should have known of his claims at the time he joined the PSE is correct and, if so, whether *Coenen v. R. W. Pressprich & Co.*, 453 F.2d 1209 (2d Cir.), *cert. denied*, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972) is controlling. The latter issue particularly is too complex, even when the applicable exchange rule is plainly applicable to disputes arising before the aggrieved party became a member, to be resolved by what at best is *obiter dicta*. I should think it better to confront this issue only when we must.

---

footnote 2 and accompanying text *supra*, De Lancie assured this court at oral argument that the post-membership events were "clean-up transactions" involving perhaps $10,000 to $12,000 of the approximately $7,000,000 in trades. Birr Wilson did not dispute this characterization, but argued instead that De Lancie should be charged with PSE membership and its concomitant responsibilities from the time of his membership application. Obviously, however, De Lancie could not be obligated to an organization before he was empowered to receive its privileges.

We note that even if the January 1978 transactions were considered arbitrable, the court could apply a variation of the "doctrine of intertwining" to hear the entire claim in district court. That doctrine, applied primarily in the Fifth Circuit, is "an important judicially-created exception ... carved out of [the Arbitration Act's] pro-arbitration scheme." *Miley v. Oppenheimer & Co.*, 637 F.2d 318, 334 (5th Cir. 1981). The doctrine holds that "when it is impractical if not impossible to separate out nonarbitrable from arbitrable contract claims, a court should deny arbitration in order to preserve its exclusive jurisdiction over federal securities claims.' " *Id.* at 335, *quoting Sibley v. Tandy Corp.*, 543 F.2d 540, 543 (5th Cir. 1976), *cert. denied* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977).