**John W. WILCOX, an individual, and Susan H. Wilcox, an individual, Plaintiffs,**

**v.**

**HO–WING SIT, an individual, and Express Fund of Chicago, Inc., a corporation, Defendants.**

**No. C–84–0615–WWS.**

United States District Court, N.D. California.

May 3, 1984.

William A. Wineberg, Matthew A. Joseph, Michael R. Simmonds, Broad, Schulz, Larson & Wineberg, San Francisco, Cal., for plaintiffs.

Patricia S. Mar, Kathie Stein, Feldman, Waldman & Kline, San Francisco, Cal., for defendants.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

Plaintiffs John and Susan Wilcox, limited partners in Express Fund, Ltd. ("Express, Ltd."), bring this action under the Securities Exchange Act of 1934, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and various state law provisions against defendants Ho-Wing Sit and Express Fund of Chicago, Inc. ("Express, Inc."), limited and general partners respectively of Express, Ltd. The gravamen of plaintiffs' complaint is that they were fraudulently induced by defendants to sell stock and invest the proceeds in Express, Ltd. which trades in stock options on the Chicago Board Options Exchange, Inc. ("CBOE"). Defendants now contend that arbitration clauses in their partnership agreement with plaintiffs and in the rules of the CBOE require the Court to stay this proceeding pending arbitration of plaintiffs' claims. In the event that the Court determines any claims to be non-arbitrable, defendants request that the Court stay the proceeding pending arbitration of the other claims. Plaintiffs contend that none of their claims are arbitrable and that arbitration of any that are should be stayed pending resolution of this proceeding.

Defendants also move under Rule 12(b)(6) to dismiss plaintiffs' RICO claim. They argue that (1) plaintiffs have failed to allege any affiliation with organized crime, (2) plaintiffs have failed to allege an enterprise separate from the named defendants, and (3) plaintiffs have failed to allege any "racketeering enterprise injury." Plain-

tiffs insist that RICO requires no such allegations, and both parties cite directly contradictory case law interpreting the statute's provisions.

The Court concludes that plaintiffs' § 10b–5 and RICO claims are non-arbitrable despite the arbitration clauses in the parties' agreements and the rules of the CBOE. Resolution of those claims, however, should be stayed pending arbitration of plaintiffs' state law claims which form the essence of their complaint. Defendants' motion to dismiss the RICO claim should be denied.

## FACTS

In 1979, plaintiffs formed a limited partnership, Wilco, Ltd., to trade in stock options on the CBOE. As such, they were required to sign agreements consenting to abide by the rules of the CBOE. In May 1980, the partnership name was changed to Express Fund, Ltd. Plaintiffs became limited partners as did defendant Ho-Wing Sit, who is president of Express Fund of Chicago, Inc.,[1] a general partner of Express, Ltd. The business of the partnership basically consisted of investing capital, contributed by its partners, in various securities and commodities on the CBOE for its own account. Its activities were managed by Ho-Wing Sit through Express, Inc. for which both received compensation. As of December 1980, plaintiffs had contributed capital in the form of pledged securities amounting to approximately $400,000.

By August 1982, the partnership had lost about $175,000 and its trading had become erratic. In particular defendants had traded heavily and apparently unsuccessfully in highly volatile options in Teledyne, Inc. Ho-Wing Sit requested plaintiffs to invest an additional $100,000, necessary for the partnership to recoup its losses. Plaintiffs informed Ho-Wing Sit that they would invest more capital only on condition that (1) the partnership no longer trade in Teledyne options, (2) Ho-Wing Sit stay as a trader in Chicago full-time, and (3) Ho-Wing Sit also invest an additional $100,000 in the partnership. Ho-Wing Sit agreed to these conditions, and plaintiffs authorized him to sell 6000 shares of their stock in Cox Broadcasting System which raised $120,000.

During October 1982, the partnership lost several hundred thousand dollars and its CBOE Clearing Agent, Lake Options, barred it from further trading. Plaintiffs later learned that Ho-Wing Sit had invested the $120,000 in an interest-bearing "reserve" account without so informing the Clearing Agent, that he had resumed trading in Teledyne options, and that he had contributed substantially less than $100,000 to the partnership. Defendants also refused to return plaintiffs' $120,000.

Plaintiffs brought this action alleging fraud in the sale of securities in violation of § 10(b) of the 1934 Act and violation of RICO. Their pendent state law claims allege common-law fraud, negligence, conversion, breach of the implied covenant of good faith and fair dealing, and breach of defendants' fiduciary duty. They seek compensatory and punitive damages as well as treble damages under RICO. Defendants now move to stay this proceeding pending arbitration and to dismiss the RICO claim. Plaintiffs cross-move to stay arbitration pending resolution of this proceeding.

## DISCUSSION

### A. *Arbitration Clauses*

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, provides in § 3 that

[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the

---

1. Plaintiffs allege that defendant Express, Inc., is a mere sham and is an "alter ego" of defendant Ho-Wing Sit who owns its shares and controls its Board.

stay is not in default in proceeding with such arbitration.

Section 3 applies to contracts covered by § 2 as follows:

A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract.

Defendants point to two provisions to settle disputes by arbitration in their agreements with plaintiffs. First they rely on the amended agreement of limited partnership for Express, Ltd. which provides in § 15.9:

Arbitration. In the event of a dispute among the Partners regarding the interpretation of this Agreement *of any other matter which remains unresolved* for a period of more than seven days following written notice of said dispute to the General Partners, disputants shall submit such dispute to binding arbitration pursuant to the Rules of the Exchange, and any award thereunder shall be final and binding on all the disputants and on the limited partnership.

Defendants contend that the underlined portion of the above paragraph contains a typographical error and that the word "of" should be replaced by the word "or." Plaintiffs disagree and argue that there is no error, that they intended the provision to cover only disputes concerning interpretation of the Agreement, and that the provision thus does not apply to their present claims. It is clear, however, that the provision as written makes no grammatical sense and that the only reasonable reading, especially in light of the use of the word "other", is that proffered by defendants. Plaintiffs bound themselves to arbitrate *all* disputes among the partners, and that

agreement should be enforceable under the Federal Arbitration Act.

■ Defendants also rely on Rule 18.1(a) of the CBOE Arbitration Rules which provides that

[a]ny dispute, claim or controversy, arising between parties who are members or persons associated with a member which arises out of the Exchange business of such parties shall, at the request of any such party and the approval of the Exchange's Director of Arbitration, be submitted for arbitration in accordance with these rules.

It cannot be disputed that defendant Ho-Wing Sit was a member of the CBOE, that plaintiffs were "persons associated with" him, and that the instant dispute "arises out of the Exchange business" of the parties. Moreover, agreement to abide by the rules of an Exchange providing for arbitration of disputes constitutes a contract enforceable in federal court, *Muh v. Newburger, Loeb & Co., Inc.,* 540 F.2d 970, 973 (9th Cir.1976). Thus defendants are correct that this Court must stay all proceedings pending arbitration *unless* plaintiffs can establish that their claims are founded on issues not "referable to arbitration" within the meaning of § 3 of the Federal Arbitration Act.

### B. *Federal Securities Claim*

■ Plaintiffs argue first that their federal securities claim is non-arbitrable under the doctrine of *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), which held § 14 of the Securities Act of 1933, 15 U.S.C. § 77n, to void stipulations to arbitrate claims brought under that Act. In *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), which carved an exception to *Wilko* for international securities transactions, the Supreme Court suggested in dicta that *Wilko* might not prohibit agreements to arbitrate claims brought under the Securities Exchange Act of 1934. However, most courts including the Ninth Circuit have assumed that *Wilko* does apply to 1934 Act claims on the basis of both the protective

intent of federal securities legislation and the similarity between § 29(a) of the 1934 Act, 15 U.S.C. § 78cc(a), and § 14 of the 1933 Act on which *Wilko* relied. *See Byrd v. Dean Witter Reynolds, Inc.*, 726 F.2d 552, 553 (9th Cir.1984); *De Lancie v. Birr, Wilson & Co.*, 648 F.2d 1255, 1258–59 (9th Cir.1981). *See also Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith*, 558 F.2d 831, 834–35 (7th Cir.1977); *Ayres v. Merrill Lynch, Pierce, Fenner & Smith*, 538 F.2d 532, 536 (3d Cir.), *cert. denied*, 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976). Plaintiffs' § 10b–5 claim would thus seem to be non-arbitrable despite the arbitration clause in the partnership agreement.

Defendants raise an additional argument, however. They point to § 28(b) of the 1934 Act, 15 U.S.C. § 78bb(b), which provides that

Nothing in this chapter shall be construed to modify existing law with regard to the binding effect (1) on any member of or participant in any self-regulatory organization of any action taken by the authorities of such organization to settle disputes between its members or participants, ... or (3) of any action described in paragraph (1) ... on any person who has agreed to be bound thereby.

The Ninth Circuit figures among a number of courts which, "recognizing the central role of self-regulating of the exchanges in the enforcement of the federal securities laws, conclude[] that § 28(b) excluded from the non-waiver provisions of the 1933 and 1934 Acts an agreement to arbitrate disputes between member firms of an exchange which were required by the exchange's [rules] to be submitted to arbitration," *Axelrod & Co. v. Kordich, Victor & Neufeld*, 451 F.2d 838, 841 (2d Cir.1971), *citing Brown v. Gilligan, Will & Co.*, 287 F.Supp. 766, 773–75 (S.D.N.Y.1968). *See De Lancie*, 648 F.2d at 1257 ("section 28(b) modifies the effects of section 29(a) to exempt certain arbitration agreements from the invalidating language of that nonwaiver provision").

It is true, as plaintiffs point out, that certain decisions have rejected the § 28(b) exception where there are claims of "wholesale fraud of institutional dimension" and the "strong public interest support[s] the need for a judicial tribunal." *First Heritage Corp. v. Prescott, Ball & Turben*, 710 F.2d 1205, 1208 (6th Cir.1983); *Allegaert v. Perot*, 548 F.2d 432 (2d Cir.), *cert. denied*, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977). That is not the case here. Plaintiffs do not represent a class of defrauded investors and their claim essentially arises out of a dispute among partners in a small investment firm. There is no "institutional dimension" to this claim, and the cases cited by plaintiffs are inapplicable.

The parties do not dispute that the CBOE is a "self-regulatory organization" within the meaning of § 28(b), that plaintiffs signed agreements consenting to abide by the rules of the CBOE, and that Rule 18.-1(a) of the CBOE Arbitration Rules would mandate arbitration of these disputes. Plaintiffs argue, however, that they are not members or participants in the CBOE and thus § 28(b) should not exempt their claim from the non-waiverability provision of § 29(a) despite the CBOE rules mandating arbitration.

It is clear that plaintiffs were not "members" of the CBOE as defined in 15 U.S.C. § 78c(a)(3)(A) of the 1934 Act. Defendants contend that the last sentence of that section which provides

[f]or purposes of sections 78f(b)(1), 78f(b)(4), 78(b)(6), 78f(b)(7), 78f(d), 78s(d), 78s(e), 78s(g), 78s(h), and 78u of this title, the term "member" when used with respect to a national securities exchange also means, to the extent of the rules of the exchange specified by the Commission, any person required by the Commission to comply with such rules pursuant to section 78f(f) of this title

brings plaintiffs within the definition. However, § 28(b) is *not* one of the enumerated sections which, it might be noted, sometimes refer, as § 28(b) does *not*, to persons associated with members. There is no reason to find that the term "members" in § 28(b) includes persons associated

with members when Congress explicitly set forth the specific provisions to which the broader definition should apply.[2]

Section 28(b), however, also refers to the binding effect of a self-regulatory agency's rules "on any person who has agreed to be bound thereby," 15 U.S.C. § 78bb(b)(3). Plaintiffs here consented to abide by the CBOE Constitution and Rules both in late 1979 when Wilco, Ltd. applied for CBOE membership and in mid-1980 when they signed the Partnership Agreement with defendants.

Plaintiffs point to *Newman v. Shearson, Hammill & Co., Inc.*, 383 F.Supp. 265 (W.D.Tex.1974), which held that an individual investor's agreement with his broker/dealer to abide by NYSE Rules did not compel arbitration of a securities fraud claim. The Court found that plaintiff had not knowingly intended to bind himself to arbitrate disputes and that compelling arbitration would thus violate "the spirit and language" of the *Wilko* doctrine:

> The purpose of Section 28(b) is to promote the self-regulatory functions of the exchanges. That purpose is not served by excluding investors such as plaintiff from the federal courthouse.
>
> Further, neither the 1963 nor the 1964 application forms signed by plaintiff mentioned arbitration, and it would be inequitable to hold that by signing those documents, plaintiff knowingly and voluntarily agreed to be bound by arbitration.

383 F.Supp. at 269 (citations omitted). The Court also found that the Rules compelled arbitration in controversies involving non-members at the instance of such non-members, *id.*

*Newman* presented an entirely different situation from the case at bench. Courts should no doubt hesitate to find independent investors to have waived important rights merely by virtue of having agreed to boiler-plate language incorporating exchange rules with which they are entirely unacquainted. Plaintiffs here, however, were sophisticated partners in an investment company whose other partners they are now suing. Not only did they originate the partnership, but they were the sole "supervisory personnel" of the predecessor partnership, Wilco, Ltd., when it applied for CBOE membership. Moreover, unlike in *Newman*, the various agreements they entered with defendant including collateral agreements pledging securities for their indebtedness to Express, Ltd. specifically provided for arbitration of disputes in accordance with CBOE rules. There is no hint of a contract of adhesion here nor of any overreaching; rather, plaintiffs now seek to avoid the terms of their partnership agreement by asserting that they did not intend to commit to arbitration. Defendants are correct that the CBOE rules should control the arbitrability of the parties' present dispute.

The Court concludes, however, that plaintiffs cannot be compelled to arbitrate their securities fraud claim even under the CBOE Rules. CBOE Arbitration Rule 18.1 on which defendants rely provides in subsection (d) that

> [t]he arbitration provisions of this Chapter shall not constitute a prospective waiver of any right of action that may arise under the federal securities laws.

Although neither party's submissions make mention of this provision, it plainly precludes requiring plaintiffs to pursue their 1934 Act claim in an arbitration proceeding rather than in federal court.

---

**2.** The cases cited by defendants do not compel a contrary result. *Tullis v. Kohlmeyer & Co.*, 551 F.2d 632, 636 n. 6 (5th Cir.1977), held merely that individual partners of a member firm of the New York Stock Exchange who were "allied members" pursuant to the Exchange's rules were "members" within the meaning of § 28(b). *De Lancie* is more troubling in that plaintiff partner of a member firm of the Pacific Stock Exchange was apparently assumed by the Ninth Circuit to be a member by virtue of his status as an associated person of the Exchange. But the Court did not squarely confront the issue, decided that the transaction at issue occurred before plaintiff was a partner of a member firm, and explicitly did not reach plaintiff's contention that he never signed documents agreeing to abide by exchange rules. The decision may thus have turned on consent rather than on membership.

### C. Arbitrability of Pendent State Claims

■ Plaintiffs' state claims are a different matter. They are unaffected by the *Wilko* doctrine and must thus be arbitrated pursuant to the Partnership Agreement. Moreover, even if plaintiff is correct that the Agreement does not provide for arbitration of the kind of dispute at issue here, arbitration is compelled by the CBOE Rules which, as discussed above, exempt only federal securities claims.

### D. Arbitrability of RICO Claim

■ The question whether claims under RICO are arbitrable is apparently one of first impression in this Circuit and has only been decided by one district court in any circuit. In *S.A. Mineracao Da Trindade-Samitri v. Utah Internat'l Inc.*, 576 F.Supp. 566, 574–76 (S.D.N.Y.1984), Judge Goettel relied on the holding in *American Safety Equipment v. J.P. Maguire*, 391 F.2d 821 (2d Cir.1968), that antitrust claims are inappropriate for arbitration, and found that "the general public interest in the enforcement of RICO is at least as great as the public interest in the enforcement of antitrust laws." The Court noted that RICO was enacted in response to "concerns touching upon vital national interests," 576 F.Supp. at 575, and that private RICO claims will often "have an impact on society at large."

Besides pointing out that *S.A. Mineracao* is now on appeal, defendants contend that the reasoning in the decision ignores the Supreme Court's recent reaffirmation of the strong federal policy in favor of arbitration in *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), and *Southland Corp. v. Keating*, — U.S. ——, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).

The reasoning underlying the *S.A. Mineracao* decision is sound. RICO casts civil litigants in the role of private attorneys general in combatting organized crime and RICO claims are thus entitled to the special protection afforded by courts to securities fraud and antitrust claims. Moreover, the state of the law interpreting the RICO statute is sufficiently embryonic that its development would seem better left to courts than to arbitrators. Finally, inasmuch as RICO claims are often predicated on violation of the securities laws, the reasoning behind the *Wilko* doctrine also militates against compelled arbitration. Plaintiffs should thus be assured a judicial forum for their RICO claims.

### E. The Stay

Plaintiffs argue that their arbitrable state claims are so "intertwined" with their nonarbitrable federal claims that the Court should nevertheless hear them all together. *See, e.g., De Lancie*, 648 F.2d at 1258–59 n. 4; *Byrd*, 726 F.2d at 554. Alternatively, they would have the Court stay arbitration of the state claims pending resolution of the federal claims. Defendants, in contrast, ask that the federal claims be stayed pending arbitration of the state claims.

■ This Court has discretion whether to proceed with the non-arbitrable claims before or after the arbitration and has authority to stay proceedings in the interest of saving time and effort for itself and litigants, *see Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936); *Atsa of Calif., Inc. v. Continental Ins. Co.*, 702 F.2d 172, 176 (9th Cir.1983). It appears to the Court that plaintiffs' state claims predominate and that judicial economy would best be served by staying this proceeding until those claims have been arbitrated. Plaintiffs' action is essentially one to recover for allegedly fraudulent misstatements made by one business partner to another. Although plaintiffs' 10b–5 claim is colorable in that the agreement to contribute additional funds to the partnership might be seen as an investment contract within the purview of the 1934 Act (although the Court expresses no view here on the merits), their complaint sounds more in terms of common-law fraud and breach of fiduciary duty, both arbitrable claims. Moreover, arbitration might resolve questions at

issue in the securities fraud and RICO claims and may well obviate further litigation. In any case, the arbitrator is likely to decide issues that will, at least, streamline subsequent proceedings before this Court. Finally, plaintiffs' RICO claim is plainly subordinate to, and predicated on, their other claims and its resolution should await arbitration of the underlying fraud issues. Plaintiffs' 10b–5 and RICO claims should thus be stayed pending arbitration of their remaining claims. *See, e.g., Mediterranean Enterprises, Inc. v. Ssangyong Corp.,* 708 F.2d 1458, 1465 (9th Cir.1983); *Mullis v. Merrill Lynch, Pierce, Fenner & Smith,* 492 F.Supp. 1345, 1361 (D.Nev.1980).

### F. *RICO Claim*

#### 1. *Organized Crime Connection*

■ Defendants cite a number of decisions including *Hokama v. E.F. Hutton & Co., Inc.,* 566 F.Supp. 636 (C.D.Cal.1983) and *Barr v. WUI/TAS,* 66 F.R.D. 109 (S.D. N.Y.1975), for the proposition that RICO plaintiffs must allege defendants' "nexus" or "link" to organized crime.

To begin with, the reasoning in *Barr* has been disapproved by the Second Circuit in *Moss v. Morgan Stanley,* 719 F.2d 5 (2d Cir.1983), which disapproved the district court opinion on which *Hokama* relied. Moreover, the large majority of courts, including every circuit to consider the question, have agreed with *Moss's* rejection of the requirement that plaintiff allege ties to organized crime. *See, e.g., Schacht v. Brown,* 711 F.2d 1343, 1353–56 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 508, 509, 78 L.Ed.2d 698 (1983); *Bennett v. Berg,* 685 F.2d 1053, 1063–64 (8th Cir.1982); and cases cited in *Schacht, supra,* at 1353–54. Finally, the Ninth Circuit has rejected the requirement that defendant be proved to have connections with organized crime in criminal prosecutions. *See United States v. Campanale,* 518 F.2d 352 (9th Cir.1975), *cert. denied,* 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976).

The reasoning behind these decisions is clear. Congress purposely declined to require that a RICO defendant be proved a member of organized crime for two reasons. First, it worried that limitation of the statute to organized crime members would create an unconstitutional "status" offense based on the affiliation rather than the conduct of defendants. Second, Congress sought to avoid imposing a difficult if not impossible burden of proof against defendants adept at concealing their organized crime connections. Accordingly, this Court refuses to read an "organized crime" requirement into the RICO statute.

#### 2. *Racketeering Enterprise Injury*

Second, defendants argue that plaintiffs have failed to allege injury by reason of the § 1962 violation (as opposed to the predicate offenses themselves), characterized by some courts as "racketeering enterprise injury." These courts seek to avoid RICO's potential applicability to "garden-variety" and securities fraud by requiring plaintiffs to allege "something more" than injury from the predicate offenses constituting the pattern of racketeering activity: plaintiffs must allege injury by reason of the conducting of an enterprise through such a pattern. None of the decisions so holding, however, defines what kind of injury might constitute the requisite "something more" or explains how injury from the predicate offenses might differ from injury from the conducting of an enterprise through a pattern of those offenses. *See, e.g., Johnsen v. Rogers,* 551 F.Supp. 281, 284–86 (C.D. Cal.1982) (denying plaintiffs' motion to add RICO claim because they failed to allege "something more, or different, than direct injury"); *Harper v. New Japan Secs. Internat'l, Inc.,* 545 F.Supp. 1002, 1007–08 (C.D.Cal.1982) (plaintiff must allege injury "by reason of a violation of § 1962" because "Congress could not have intended to provide treble damages ... to persons whose only injury stems directly from the predicate acts alone"); *Landmark Sav. & Loan v. Rhoades, Hornblower & Co.,* 527 F.Supp. 206 (E.D.Mich.1981).

Although a majority of courts have rejected the earlier suggested requirement that plaintiffs demonstrate "competitive in-

jury" along the lines of the antitrust laws, the "racketeering enterprise injury" requirement has fared slightly better. The Second Circuit's decision in *Moss* expressly left the question undecided, 719 F.2d at 20 n. 16, and the Seventh Circuit's decision in *Schacht, supra,* suggested it found the arguments for the requirement "without merit" but determined it need not reach the question, 711 F.2d at 1358–59.

A growing number of courts have come to recognize the meaninglessness of the requirement of "racketeering enterprise injury." They point out that there is no distinction between injury from the pattern of predicate offenses and injury from the conducting of an enterprise through such a pattern, and that the requirement "could lead to the anomalous result of denying standing to persons concededly the direct victims of racketeering activity." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 567 F.Supp. 1146, 1157 (D.N.J.1983). *See also Windsor Assocs., Inc. v. Greenfeld,* 564 F.Supp. 273, 278–79 (D.Md.1983) (relying on *Schacht* to reject requirement); *Eisenberg v. Gagnon,* 564 F.Supp. 1347, 1352–53 (E.D.Pa.1983) ("it has not been made clear either by defendants or the cases [requiring racketeering enterprise injury] what that 'something more' would be"); *Mauriber v. Shearson/American Express, Inc.,* 567 F.Supp. 1231, 1240–41 (S.D.N.Y.1983) (neither legislative history nor statutory language supports "racketeering enterprise injury"); *Crocker Nat'l Bank v. Rockwell Internat'l Corp.,* 555 F.Supp. 47, 49–50 (N.D.Cal.1982). As the court in *Mauriber* noted,

> A brokerage enterprise infiltrated by organized crime and engaged in defrauding its customers through acts like those alleged here might injure no one but the customers of the enterprise. There would be no injury above and beyond that caused by the predicate acts of fraud forming the "pattern of racketeering activity." Such conduct, however, would violate RICO and would lie near the center of Congress' concern. In addition, § 1964(c) simply provides that "any person ... injured by reason of a

violation of section 1962" may invoke RICO's civil remedies. I can imagine no construction of those words which would exclude from their coverage the primary victims of such a scheme and which would render such defendants immune from civil sanctions.

567 F.Supp. at 1240.

This Court agrees that RICO does not require an allegation of "racketeering enterprise injury."

### 3. *Enterprise as Defendant*

■ Plaintiffs' complaint at ¶ 33 clearly alleges an enterprise, the Express, Ltd. partnership, to have been conducted by defendants Ho-Wing Sit and Express, Inc. through a pattern of racketeering activity. There is no identity between the enterprise and defendants, and there is thus no deficiency in plaintiffs' complaint under *Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir. 1984).

Accordingly the motion to dismiss the RICO claim is denied. The motion to stay further proceedings in this action pending arbitration is granted. This order will not be stayed in the event plaintiffs appeal. A status conference will be held in this action on Friday, December 14, 1984, at 10 a.m.

IT IS SO ORDERED.