**BOB LADD, INC.,**

v.

**William Basil ADCOCK and Shearson Lehman Brothers, Inc.**

No. LR C 85 687.

United States District Court,
E.D. Arkansas, W.D.

March 7, 1986.

W.H. "Sonny" Dillahunty, Little Rock, Ark., for plaintiff.

Scott E. Daniel, Hillburn, Bethune, Calhoon, Harper & Pruniski, Ltd., North Little Rock, Ark., for defendants.

## ORDER

OVERTON, District Judge.

Pending before the court is defendants' motion for stay of these proceedings and an order compelling arbitration. Plaintiff initially filed this complaint alleging violations of the Securities Act of 1933, the Securities Exchange Act of 1934, the Racketeer Influenced and Corrupt Organization Act (RICO), and various unspecified provisions of Arkansas common law. In an order entered by this court on December 20, 1985, plaintiff was directed to file an amended complaint in which the alleged violations are set out with specificity. The amended complaint was filed on January 2, 1986, and plaintiff alleged specific violations of the Exchange Act of 1934 and the RICO Act. Defendants have now requested that the court rule on their motion in light of the allegations raised in the amended complaint and the defendants' previously submitted brief.

In the summer of 1984, plaintiff opened two accounts with Shearson's Little Rock office. One account was a Financial Management Account (FMA) and the other was a Commodity Trading Account (CTA). Plaintiff asserts that the FMA was intend-

ed to facilitate conducting its business overseas while the CTA was intended to be income producing. With respect to the CTA, plaintiff states that defendants received express instructions regarding the manner in which that account was to be handled and the limit of losses which would be tolerated. In connection with each account, plaintiff executed agreements which contained arbitration clauses. Although the exact wording of the respective clauses varies, it essentially provides that any disputes arising out of or relating to the accounts shall be subject to arbitration. The arbitration agreement accompanying the CTA also contains language informing the customer that it need not be signed in order to open an account. During the ensuing months, plaintiff alleges that defendants engaged in a pattern of transactions designed to defraud plaintiff and which ultimately resulted in a substantial depletion of the two accounts.

In response to the complaint, defendants contend that, pursuant to the provisions of the United States Arbitration Act, 9 U.S.C. § 1, *et seq.,* they are entitled to a stay of these proceedings and an order compelling the parties to submit their dispute to arbitration in accordance with the agreements. Plaintiff maintains that the alleged violations raised in the complaint are not subject to arbitration and that defendants' motion must be denied.

The Arbitration Act provides that a written provision in a contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract or transaction shall be valid, irrevocable, and enforceable except upon any grounds as exist at law or equity for the revocation of any contract. 9 U.S.C. § 2. It is further provided that district courts shall direct the parties to proceed to arbitration on those issues to which a valid arbitration agreement has been signed. 9 U.S.C. § 3. Arbitration agreements are enforceable absent a basis for revocation of the contractual agreement or in cases involving certain specifically exempted federal claims. *See, Dean Witter Reynolds v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84

L.Ed.2d 158 (1985). "Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration". *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983).

██ To prevail on a motion to compel arbitration, a party must establish the existence of an agreement to arbitrate, arbitrable claims, and that no waiver of the right to arbitrate has occurred. *See, McMahon v. Shearson/American Express, Inc.,* 618 F.Supp. 384, 386 (S.D.N.Y.1985). In the present case, the arbitration agreements signed by plaintiff appear to be valid and there is no allegation that they are otherwise. Absent a revocable or otherwise unenforceable arbitration agreement, this court must compel arbitration of all arbitrable claims unless the moving party has waived its right to arbitration. The remaining questions for the court to resolve are whether plaintiff's claims are subject to arbitration and whether defendants have waived their right to submit the arbitrable claims to arbitration.

██ As previously stated, plaintiff claims violations of § 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934 and the RICO Act (18 U.S.C. § 1961 *et seq.*). In *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the United States Supreme Court determined that an arbitration agreement involving claims under § 12(2) of the Securities Act of 1933 was unenforceable. Confronted with the seemingly conflicting policies of the Securities Act of 1933 and the Arbitration Act, the court decided that the intention of Congress concerning the sale of securities under the 1933 Act was best carried out by holding the arbitration agreement invalid. *Id.* at 438, 74 S.Ct. at 188. The underlying rationale for this determination was based on the finding that § 12(2) of the 1933 act created a special right to recovery which differed substantially from the common-

law action, that an action under this section could be brought in either state or federal court (providing broad venue and jurisdiction possibilities), and that the language of § 14 of the 1933 Act barred waiver of compliance with any provision of the Act by any condition, stipulation, or provision (such as an arbitration agreement). *Id.* at 430–31, 74 S.Ct. at 184–85. Since *Wilko,* several courts have extended that ruling and held that arbitration agreements are unenforceable as to claims alleging violations of the Securities Exchange Act of 1934. *See, e.g., Surman v. Merrill Lynch, Pierce, Fenner & Smith,* 733 F.2d 59, 61 (8th Cir.1984) *citing, Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith,* 558 F.2d 831 (7th Cir.1977); *Sibley v. Tandy Corp.,* 543 F.2d 540 (5th Cir.1976), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977); *Ayres v. Merrill Lynch, Pierce, Fenner & Smith,* 538 F.2d 532 (3rd Cir.), *cert. denied,* 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976). *See also, DeLancie v. Birr, Wilson & Co.,* 648 F.2d 1255 (9th Cir.1981); *Webb v. R. Rowland & Co.,* 613 F.Supp. 1123 (E.D.Mo.1985).

The Supreme Court, in 1974, concluded that, in the context of international transactions, claims arising under § 10(b) of the Exchange Act were subject to arbitration. *Scherk v. Alberto Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). While focusing on the international aspects and implications of the dispute, the court noted the important distinctions between the 1933 Act and the 1934 Act. *Id.* at 513–14, 94 S.Ct. at 2454–55. These distinctions were amplified by Justice White in his concurring opinion in *Dean Witter Reynolds, Inc. v. Byrd, supra:*

> While § 29 of the Exchange Act is equivalent to § 14 of the 1933 Act, counterparts of the other two provisions are imperfect or absent altogether. Jurisdiction under the 1934 Act is narrower, being restricted to the federal courts ... More important, the cause of action under § 10(b) and Rule 10b–5, involved here, is implied rather than express ... The phrase "waive compliance with any provision of this chapter" ... is thus

literally inapplicable. Moreover, *Wilko's* solicitude for the federal cause of action—the "special right" established by Congress ...—is not necessarily appropriate where the cause of action is judicially implied and not so different from the common law action.

*Id.* 105 S.Ct. at 1244. Justice White concluded by warning against mechanically transplanting the reasoning of *Wilko* to cases arising under the 1934 Act. In light of *Byrd* and other considerations, several district courts have recently held that the *Wilko* doctrine does not extend to § 10(b) claims. *See, e.g., Brener v. Becker Paribas Inc.,* 628 F.Supp. 442 (S.D.N.Y.1985) (and the cases cited therein); *West v. Drexel Burnham Lambert, Inc.,* 623 F.Supp. 26 (W.D.Wash.1985); *McMahon v. Shearson/American Express, Inc., supra* at 388, fn 21.

Those courts which have applied the *Wilko* doctrine to claims arising under the 1934 Act have done so in a rather "mechanical" fashion and with little regard for the nature of the specific claim being set forth. On the other hand, those courts which have declined to apply the Wilko doctrine have done so only where the claims arise under § 10(b), or Rule 10b–5, and have recognized the differences between the 1933 Act and the 1934 Act as well as the fact that other kinds of claims arising under the 1934 Act may not be subject to arbitration. In light of the foregoing authorities, the nature of plaintiff's claims (a single securities representative "churning" an account of a single customer as opposed to an industry-wide practice involving many customers), and the apparent freedom with which plaintiff entered into the agreement, this court concludes that plaintiff's claims under § 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934 are subject to arbitration.

■ Having determined that the § 10(b) claims are arbitrable, the court must now consider the arbitrability of the RICO claim. In determining whether an agreement to arbitrate will be unenforceable with respect to a specific claim, courts

must rely on the congressional intention as expressed in the statute upon which such a claim is brought. *See, Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). It must be assumed that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* — U.S. ——, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). A party having made an agreement to arbitrate should be held to it unless Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue. *Id.*

There is no indication that Congress intended to exempt civil RICO claims from the coverage of the Arbitration Act and there is no express language evidencing such an intent in the RICO Act itself. *See, Brener v. Becker Paribas, Inc., supra. Cf. McMahon v. Shearson/American Express, Inc., supra.* Again, in the absence of such indication, and in view of the fact that plaintiff's claims under the RICO Act are not the type originally envisioned,[1] this court finds that the RICO claims must also be submitted to arbitration.

As a final matter, plaintiff raises the issue of a possible waiver on the part of the defendants of their right to seek arbitration. In support of this assertion, plaintiff points to the conduct of the defendants regarding the handling of plaintiff's complaints which were first brought to their attention in April of 1985. The question warrants little comment except to note that the court is convinced that nothing in this case would support a finding that defendants have waived any right to submit the dispute to arbitration.

Defendants' motion to stay these proceedings and direct the parties to submit their disputes to arbitration in accordance with the arbitration agreement is granted.

**1.** The stated purpose of the RICO Act is the eradication of organized crime by providing, *inter alia,* new remedies to deal with the unlawful activities of those engaged in organized crime. In its civil version, RICO has evolved

into kind of a "federal business tort statute". *See, West v. Drexel Burnham Lambert, Inc., supra.* Under the circumstances in which this type of claim arises, it seems quite appropriate to submit the dispute to arbitration.