**Jack R. BROWN, Plaintiff,**

v.

**DEAN WITTER REYNOLDS, INC., Robert Steinlauf and Richard Ten Eyck, Defendants.**

No. 84–6701–Civ-Gonzalez.

United States District Court, S.D. Florida, N.D.

Jan. 22, 1985.

Arthur Leibell, Fort Lauderdale, Fla., for plaintiff.

Edward Marko, Fort Lauderdale, Fla., for defendants.

## ORDER

GONZALEZ, District Judge.

Plaintiff sues defendants for federal and state security laws violations, and for alleged state common-law wrongs. The parties have previously contracted to submit the state claims to arbitration.

Query: Does federal law require a stay of the arbitration of the state law claims pending disposition of the federal claims in United States District Court?

For the reasons set forth below, the court answers no.

### I.

Plaintiff Jack R. Brown, a disgruntled investor, has brought this action to recoup the losses he sustained through the acquisition of stocks purchased on his behalf by defendants Dean Witter Reynolds, Inc. ("Dean Witter") and two of its employees, Vice-President and Branch Manager Robert Steinlauf, and broker Richard Ten Eyck. Plaintiff contends that after opening two accounts at Dean Witter, Messrs. Steinlauf and Eyck induced him to purchase and retain two securities based on misrepresentations or omissions of material facts. Consequently, plaintiff has brought a six count complaint charging defendants with violations of federal and state securities laws. Count 1 alleges a cause of action under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b) (West 1981) and Rule 10b-5, 17 C.F.R.

§ 240.10b-5 (1983); Count 2 alleges fraud in the offer or sale of securities in violation of section 12(2) of the Securities Act of 1933, 15 U.S.C.A. § 77l (2) (West 1981); and Counts 3, 4, 5 and 6 allege that defendants violated Fla.Stat. §§ 517.211, 517.301 (1983), breached their fiduciary duty, negligently supervised plaintiff's accounts and committed common-law fraud, respectively.[1]

Defendants have moved to stay the non-federal proceedings pending arbitration to be conducted after judgment resolution of the federal claims. The court now proceeds to consider the merits of defendants' motion.

### II.

In connection with his Dean Witter account, plaintiff executed an Active Assets Account Agreement[2] and an Options Trading Agreement,[3] both containing arbitration provisions.

The statutory authorization for and enforcement of most arbitration clauses is provided by section 2 of the Federal Arbitration Act, 9 U.S.C.A. § 2 (West 1970):

A ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract,

---

1. The court has renumbered the Counts in plaintiff's complaint to reflect their proper position.

2. Any controversy between [Dean Witter Reynolds] DWR and me arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the American Association, or the Board of Arbitration of the New York Stock Exchange, as I may elect. If I do not make such election by registered mail addressed to DWR at DWR's main office within five (5) days after receipt of notification from DWR requesting such election, then I authorize DWR to make such election on my behalf. Any arbitration hereunder shall be before at least three arbitrators and the award shall be final, and judgment upon the award

rendered may be entered in any court, state or federal, having jurisdiction.

3. Any controversy between us arising out of or relating to this agreement or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the American Arbitration Association, the Board of Arbitration of the New York Stock Exchange, the American Stock Exchange, the Chicago Board Options Exchange or the National Association of Securities Dealers, Inc. as I may elect. If I do not make such election by registered mail addressed to you at your main office within five (5) days after receipt of notification from you requesting such election, then I authorize you to make such election in my behalf.

transaction, or refusal shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Upon application of a party who is not in default in proceeding with arbitration, the court shall stay the trial of the action until arbitration is had in accordance with the terms of the parties' agreement. *Id.* § 3 (West 1970). As section 3 explains,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

■ Arbitration is generally preferred over litigation as a vehicle for the resolution of private disputes because it is speedier and less costly for the parties and because it relieves already congested court dockets.[4] *See Southland Corp. v. Keating,* — U.S. ——, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984); *Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1025 (11th Cir.1982).

■ Plaintiff's claims in this case are plainly within the scope of the arbitration clauses contained in the Agreements he executed with defendants. Those contracts governed purchases of securities for plaintiff's accounts, transactions borne of defendants alleged misrepresentations or omissions of material facts. That Richard Ten Eyck did not sign the Agreements does not alter this result, for the clauses are broad enough to include disputes arising out of business between plaintiff and other

Dean Witter employees who are not signatories to the contract. *See Vic Potamkin Chevrolet, Inc. v. Bloom,* 386 So.2d 286, 288 (Fla. 3rd DCA 1980). Arbitration clauses are to be liberally construed with any doubts being resolved in favor of arbitration. *See DeHart v. Moore,* 424 F.Supp. 55 (S.D.Fla.1976). This case is no exception to that rule.

Disregarding for the moment the *Wilko* doctrine, which is discussed below, it is also clear that the arbitration provisions are valid under the Federal Arbitration Act. The allegations of misrepresentation and breach of fiduciary duty arise out of or relate to plaintiff's accounts within the meaning of the arbitration clauses. The purchases in question were to be executed through the facilities of national securities exchanges and thus are evidence of "transaction[s] involving commerce" within the meaning of 9 U.S.C.A. § 2. *See Parry v. Bache & Co.,* 125 F.2d 493, 495 (5th Cir. 1942). Additionally, defendants did not waive their right to seek arbitration, "for they filed [their] motion to stay proceedings and compel arbitration the very day [they] filed [their] answer to plaintiff's complaint, and took no actions which could be viewed as being inconsistent with [their] right of arbitration." *Sibley v. Tandy Corp.,* 543 F.2d 540, 542 (5th Cir.), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977). In short, the Active Assets Account Agreement and the Options Trading Agreement are within the scope of, and valid under, the Federal Arbitration Act.

### III.

The validity of arbitration provisions that govern securities transactions is tempered by two exceptions to section 2 of the Federal Arbitration Act: the *Wilko* doctrine and the doctrine of intertwining.

---

**4.** A Senate Committee report discussing the accomplishments of the Federal Arbitration Act noted with pleasure a New York Times article that reported on the relatively low costs of arbitration compared to litigation, and on the few weeks required to reach a decision in arbitration versus years in the courts. S.Rep.No. 536, 68th Cong., 1st Sess. 3 (1924).

–A–

In *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Supreme Court of the United States ripped the lid off the Pandora's Box of securities litigation and ruled that an agreement between a purchaser and a broker/dealer to arbitrate future controversies arising under the Securities Act of 1933 is void as contrary to the anti-waiver provisions of section 14 of the Act, 15 U.S.C.A. § 77n (West 1981).[5] Sections 11(a),[6] 12,[7] 16,[8] and 22(a)[9] permit a person acquiring a security to sue in federal, state or territorial courts, in law or in equity, to enforce any liability or duty created by the 1933 Act. Compulsory arbitration clauses deprive an investor of his right to select a judicial forum to resolve his claim, and hence are a nullity under section 14, which proscribes "[a]ny condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision" of the Securities Act of 1933.

According to Justice Reed, writing for the Court, purchasers of securities require special protection because "[i]ssuers of and dealers in securities have better opportunities to investigate and appraise the prospective earnings and business plans effecting securities than buyers." 346 U.S. at 435, 74 S.Ct. at 187. This is especially true when purchasers and brokers first contract to do business, for at that time the former "is less able to judge the weight of the handicap the Securities Act places upon his adversary." *Id.* Thus, a buyer who signs an agreement to arbitrate actually is unknowingly waiving many of his own legal rights; on this basis alone the compulsory arbitration clause fails since one can validly waive only known rights.

**5.** Plaintiff, a customer of Hayden, Stone & Co., brought an action under section 12(2) of the Securities Act of 1933, 15 U.S.C.A. § 77*l*(2) (West 1981), to recover damages from the firm for its alleged misrepresentations in the sale of securities. When plaintiff opened his account, he signed a standard margin agreement that required arbitration of any subsequent disputes. After plaintiff filed suit, the defendant moved to stay the trial pursuant to section 3 of the Federal Arbitration Act and to compel arbitration of plaintiff's section 12(2) claim.

**6.** Section 11(a) reads in pertinent part:
In case any part of the registration statement, when such part became effective, contained an untrue statement of material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, *any person acquiring such security* (unless it is proved that at the time of such acquisition he knew of such untruth or omission) *may, either at law or in equity, in any court of competent jurisdiction, sue....*
15 U.S.C.A. § 77k(a) (West 1981) (emphasis added).

**7.** Section 12 provides:
*Any person* who—
(1) offers or sells a security in violation of section 5, or
(2) offers or sells a security ... by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of· such untruth or omission, shall be liable to the person purchasing such securities from him, who *may sue either at law or in equity in any court of competent jurisdiction....*
15 U.S.C.A. § 77*l* (West 1981) (emphasis added).

**8.** "The rights and remedies provided by this title shall be in addition to any and all other rights and remedies that may exist at law or in equity." 15 U.S.C.A. § 77p (West 1981). In enacting section 16, Congress "sought only to make it abundantly clear that it was not pre-empting [the field of securities regulation] to the federal jurisdiction, thereby prohibiting recovery to defrauded individuals under the law of the states as that existed prior to the passage of the Securities Act." *Independence Shares Corp. v. Deckert,* 108 F.2d 51, 54 (3rd Cir.1939); *see Nagel v. Prescott & Co.,* 36 F.R.D. 445, 448 n. 1 (N.D.Ohio 1964).

**9.** Section 22(a) provides in pertinent part:
*The district courts of the United States ... shall have jurisdiction of offenses and violations under this title* and under the rules and regulations promulgated by the Commission in respect thereto, and *concurrent with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by this title.*
15 U.S.C.A. § 77v (West 1981) (emphasis added).

Another reason why the Court considered persons acquiring securities to be in need of protection was its belief that arbitration lacked the certainty of suits at law or equity to enforce a purchaser's rights; the record might not be sufficiently developed nor the arbitrator's reasoning clear. 346 U.S. at 436–37, 74 S.Ct. at 187–88.

■ The *Wilko* doctrine has been judicially applied without regard for the investor's financial acumen. *See Newman v. Shearson, Hammill & Co.*, 383 F.Supp. 265, 268 (W.D.Tex.1974). More troublesome to many courts is the standardized form signed by sophisticated and unsophisticated investor alike which compels arbitration of future controversies without any bargaining on the question of dispute resolution. *Id.* (citing *Stier v. Smith*, 473 F.2d 1205 (5th Cir.1973)). Distinguishable from this situation and hence excepted from the doctrine are agreements between individuals who Congress did not believe warranted special protection. For example, the *Wilko* doctrine does not apply to agreements to arbitrate future disputes between dealers [10] because Congress assumed they could "fend for themselves...." *Brown v. Gilligan, Will & Co.*, 287 F.Supp. 766, 772 & n. 10, 773–75 (S.D.N.Y.1968); *see Wilko*, 346 U.S. at 435, 74 S.Ct. at 186–87 ("While a buyer and seller of securities, under some circumstances, may deal at arm's length on equal terms, it is clear that the Securities Act was drafted with an eye to the disadvantages under which *buyers* labor.") (emphasis added).

■ In addition to protecting most "buyers" regardless of their financial sophistication, the *Wilko* doctrine only applies to agreements to arbitrate *future* controversies under the securities laws. Voluntary agreements to submit an *existing* controversy to arbitration are not covered by the doctrine. *Wilko*, 346 U.S. at 438, 74 S.Ct. at 188; *id.* at 438, 74 S.Ct. at 189 (Jackson, J., concurring) ("I agree with the Court's opinion insofar as it construes the Securities Act to prohibit waiver of a judicial remedy in favor of arbitration by agreement made before any controversy arose."); *see Moran v. Paine, Webber, Jackson & Curtis*, 389 F.2d 242, 246 (3rd Cir.1968), *aff'g*, 279 F.Supp. 573 (W.D.Pa. 1967); *Reader v. Hirsch & Co.*, 197 F.Supp. 111, 117 (D.D.C.1961) (citing Note, 62 Yale L.J. 985, 994–96 (1953)).

Courts have extended the *Wilko* doctrine to agreements to arbitrate future claims arising under the Securities Exchange Act of 1934, 15 U.S.C.A. 78a (West 1981). *See Raiford v. Buslease Inc.*, 745 F.2d 1419, 1420 (11th Cir.1984) (citing *Sawyer v. Raymond, James & Associates, Inc.*, 642 F.2d 791, 792 (5th Cir.1981)); *Merrill Lynch, Pierce, Fenner & Smith v. Moore*, 590 F.2d 823, 827–29 (10th Cir.1978) (*Wilko* doctrine proscribes compulsory arbitration of 10b–5 action); *Sibley v. Tandy Corp.*, 543 F.2d 540, 543 n. 3 (5th Cir.1976), *cert. denied*, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977); *Newman v. Shearson, Hammill & Co.*, 383 F.Supp. 265, 268–69 (W.D.Tex. 1974) (neither section 28(b) of the Exchange Act nor Article VIII, section 6 of the NYSE constitution requires an investor who is not a member of NYSE to submit claims arising under the 1934 Act to arbitration); *Starkman v. Seroussi*, 377 F.Supp. 518, 524 (S.D.N.Y.1974) (alleged violation by broker/dealer of NYSE Rules adopted pursuant to Exchange Act states cause of action under 1934 Act so as to vest exclusive jurisdiction in federal courts and thereby preclude enforcement of arbitration agreement). This makes sense since federal courts have exclusive jurisdiction over actions brought under the Exchange Act, section 27, 15 U.S.C.A. § 78aa (West 1981),[11]

---

**10.** The Securities Act of 1933 defines "dealer" as "any person who engages either for all or part of his time, directly or indirectly, as agent, broker, or principal, in the business of offering, buying, selling, or otherwise dealing or trading in securities by another person." 15 U.S.C.A. § 77b(12) (West 1981).

**11.** The district courts of the United States ... shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.

and thus a compulsory arbitration clause would require a purchaser of securities to waive an exclusive federal right. Moreover, the language of the non-waiver provision of the Exchange Act, section 29(a), 15 U.S.C.A. § 78cc(a) (West 1981),[12] is virtually identical to the text of section 14 of the Securities Act, and the logic of one supplements the other.[13]

■ The *Wilko* doctrine, and section 29(a), do not preclude enforcement of a stipulation to arbitrate entered into by a member firm of the New York Stock Exchange ("NYSE") and a nonmember firm.[14] *Axelrod & Co. v. Kordick, Victor & Neufeld,* 451 F.2d 838, 842 (2d Cir.1971). Additionally, in *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), a case involving claims under section 10(b) of the Exchange Act and Rule 10b–5, the Supreme Court held that the

*Wilko* doctrine did not apply to a stipulation for arbitration contained in a contract most likely governed by foreign law.[15]

As the foregoing analysis of the Federal Arbitration Act and the *Wilko* doctrine reveals, the Act and the doctrine clearly are in conflict with one another. The Supreme Court acknowledged this tension in *Wilko:*

> Two policies, not easily reconcilable, are involved in this case. Congress has afforded participants in transactions subject to its legislative power an opportunity generally to secure prompt, economical and adequate solution of controversies through arbitration if the parties are willing to accept less certainty of legally correct adjustment. On the other hand, it has enacted the Securities Act to protect the rights of investors and has forbidden a waiver of any of those rights.

15 U.S.C.A. § 77aa (West 1981).

**12.** Section 29(a) reads: "Any condition, stipulation, or provision binding any person to waive compliance with any provision of this title or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void."

**13.** The Act of 1934 ... is supplementary to the Securities Act of 1933, except that in its judicial remedy the federal courts shall be exclusive.... "The 1934 Act has three basic purposes: To afford a measure of disclosure to people who buy and sell securities; to regulate the securities markets; and to control the amount of the Nation's credit which goes into those markets." The non-waiver provision is almost identically worded in each Act wherein provision is made that any condition or stipulation binding any person to waive compliance with any section of the Act is void. The Act of 1934, accordingly, as indicated, is supplementary to that of 1933, except in its judicial remedy, and accordingly, the same logic is applicable to that of 1933, and, therefore, to both non-waiver sections.
*Moran v. Paine, Webber, Jackson & Curtis,* 389 F.2d 242, 245 (3rd Cir.1968); *see also Merrill Lynch, Pierce, Fenner & Smith v. Moore,* 590 F.2d 823, 827 (10th Cir.1978).

**14.** The NYSE constitution requires member firms to arbitrate a controversy with a nonmember firm at the latter's request.

**15.** [The controversy in *Scherk* arose out of] an international transaction which was negotiated in the United States, England, and Germa-

ny, signed in Austria, and closed in Switzerland. Many of the clauses of the contract were in controversy. There was a stipulation for arbitration. It was held that the arbitration clause was to be enforced by the federal courts in accordance with the Arbitration Act. It was emphasized that to not give effect to the arbitration clause would under these circumstances create uncertainty, since there were substantial contracts in each of the two countries each on conflicts of laws and also contractual provisions specifying in advance the forum in which disputes shall be litigated together with the applicable law. Foreign contractors were not conscious of the Securities remedies. The Court said:
> Such a contract involves considerations and policies significantly different from those found controlling in *Wilko.* In *Wilko,* quite apart from the arbitration provision, there was no question but that the laws of the United States generally, and the federal securities laws in particular, would govern disputes arising out of the stock-purchase agreement. The parties, the negotiations, and the subject matter of the contract were all situated in this country, and no credible claim could have been entertained that any international conflict-of-laws problems would arise. In this case, by contrast, in the absence of the arbitration provision considerable uncertainty existed at the time of the agreement, and still exists, concerning the law applicable to the resolution of disputes arising out of the contract.

*Merrill Lynch, Pierce, Fenner & Smith v. Moore,* 590 F.2d 823, 828 (10th Cir.1978) (quoting *Scherk,* 417 U.S. at 515–16, 94 S.Ct. at 2455).

346 U.S. at 438, 74 S.Ct. at 188 (footnote omitted); *see Merrill Lynch, Pierce, Fenner & Smith v. Moore,* 590 F.2d 823, 825 (10th Cir.1978).

Given the frequency with which the Federal Arbitration Act and the federal securities acts are amended by Congress and applied by the courts, it is somewhat puzzling why lawmakers have never bothered to resolve the inconsistencies between the laws. The legislative history of sections 14 and 29(a) make no mention of the Federal Arbitration Act, yet courts seem certain that the non-waiver provisions of the securities laws supersede section 2 of the Arbitration Act in most cases. Perhaps the congressional silence on the subject in the wake of *Wilko* and its progeny should be interpreted as ratification of the judicial construction of these laws. More will certainly be learned from the Supreme Court's decision in *Byrd v. Dean Witter Reynolds, Inc.,* 726 F.2d 552 (9th Cir.), *cert. granted,* — U.S. ——, 104 S.Ct. 3509, 82 L.Ed.2d 818 (1984).

–B–

After *Wilko v. Swan,* when confronted by complaints alleging both arbitrable state or common-law claims and nonarbitrable federal securities claims, courts typically resolved the conflict between the Arbitration Act and the securities laws by staying litigation of the federal securities claims pending arbitration of the state or common-law issues. *See Sibley v. Tandy Corp.,* 543 F.2d 540, 544 (5th Cir.), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977); *DeHart v. Moore,* 424 F.Supp. 55 (S.D.Fla.1976); *cf. Raiford v. Buslease Inc.,* 745 F.2d at 1421–22 (11th Cir.1984).

Trouble developed, however, when the arbitrable state claims were factually and legally indistinguishable from—or intertwined with—the federal securities claims. Several courts of appeals, including the Fifth and Eleventh Circuits, have ruled that under these circumstances the district court should deny arbitration of all the claims and require that they be litigated in federal court. *See Raiford,* 1422–23; *Sib-*

*ley,* 543 F.2d at 541. This rule is known as the doctrine of intertwining.

Arbitrable and nonarbitrable claims are considered intertwined "when the same factual (and legal) conclusions must be drawn from the common evidentiary facts in order to resolve the federal and pendent state claims...." *Miley v. Oppenheimer & Co.,* 637 F.2d 318, 335–36 (5th Cir.1981). Identifying intertwined federal and state claims is at once easy and difficult, for "skillful pleading will always produce enough intertwining ... to defeat arbitration." *Dickinson v. Heinold Securities, Inc.,* 661 F.2d 638, 646 (7th Cir.1981). The doctrine of intertwining has found a receptive audience among federal courts entertaining securities claims. *See Raiford,* at 1422–23 (§§ 12(1) and 10(b) claims intertwined with alleged breach of fiduciary duty and common-law fraud); *Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1027 (11th Cir.1982), *rev'g,* 518 F.Supp. 602 (S.D.Fla.1981) (various unspecified common law and federal securities claims intertwined); *Sawyer v. Raymond, James & Associates, Inc.,* 642 F.2d 791, 793 (5th Cir.1981) (alleged violation of federal securities laws, the rules and regulations of the NYSE and the NASD, and common law fraud, fiduciary responsibility and negligence considered intertwined); *Miley,* 637 F.2d at 334–37 (section 10(b) and Rule 10b–5 churning claim intertwined with claim for breach of fiduciary duty); *Shapiro v. Jaslow,* 320 F.Supp. 598, 600 (S.D.N.Y.1970) (cross-claim alleging violations of common law and the Securities Act, the Exchange Act, and the rules of the SEC, the NYSE, and the NASD held to be intertwined); *Stockwell v. Reynolds & Co.,* 252 F.Supp. 215 (S.D.N.Y.1965) (claims for violations of § 10(b), Rule 10b–5, common-law fraud, common-law negligence and breach of fiduciary duty considered intertwined); *see also Sibley,* 543 F.2d at 543 (§ 10(b) and Rule 10b–5 claim that were "dependent upon other contract claims" not intertwined); *DeHart,* 424 F.Supp. at 57 (breach of agreement not sufficient to establish violation of § 10(b) and Rule 10b–5). *But see Elias v. Merrill Lynch, Pierce, Fenner*

*& Smith, Inc.,* 53 U.S.L.W. 2308 (D.N.J. Nov. 8, 1984).

The rationale for the doctrine of intertwining is two-fold. First, by requiring that factually and legally inseparable claims be litigated in federal court, the doctrine preserves the federal court's jurisdiction over the federal securities act claims.[16] *See Sibley,* 543 F.2d at 543; *accord Raiford,* at 1422; *Belke,* 693 F.2d at 1026. Arbitration, it is argued, should not be allowed to fetter or restrict a court's jurisdiction over and ability to resolve the federal securities law issues. In instances where the facts underlying both federal and common law claims are identical, it is felt that if the state claims were severed and sent to arbitration while the non-arbitrable claims are stayed, the court would be bound to apply the factual findings made by the arbitrator to the federal claims. Because this is considered to undermine the court's jurisdiction by limiting or eliminating its power to resolve the factual issues underlying the federal claim *de novo,* arbitration is generally denied in this context.

A second justification for the doctrine of intertwining is that foregoing arbitration and litigating related claims together is judicially efficient. As the Eleventh Circuit explained in *Raiford,* ordering arbitration of a state claim before judicial resolution of a federal securities claim "is inefficient and frustrates the purpose of the Arbitration Act to promote fast, inexpensive dispute resolution. At 1422.

In weighing the policies of the federal securities laws and the Federal Arbitration Act, the doctrine of intertwining obviously favors the former because arbitration agreements were not meant to be enforced at the risk of compromising the federal court's jurisdiction and duplicating the efforts of the parties.

—C—

Read together, the *Wilko* doctrine and the doctrine of intertwining effectively preclude the arbitration of factually and legally indistinguishable federal and state securities claims *prior* to litigation of the federal claims in district court. *Raiford,* at 1421–22.

But what if the district court stays the proceedings on the nonfederal claims, pending arbitration to be conducted after judgment resolution of the federal claims? Several courts have adopted this procedure in an attempt to better accommodate the conflicting policies of the federal securities laws and the Federal Arbitration Act. *See Liskey v. Oppenheimer & Co.,* 717 F.2d 314 (6th Cir.1981) (staying arbitration of violations of stock exchange and association rules as well as state common law pending conclusion of federal litigation); *Dickinson v. Heinold Securities Inc.,* 661 F.2d 638 (7th Cir.1981) (staying arbitration of state tort and contract claims until completion of federal litigation of § 10(b) and Rule 10b–5 claims); *Ging v. Parker-Hunter, Inc.,* 544 F.Supp. 49 (W.D.Pa.1982) (staying arbitration of counts alleging breach of contract, breach of fiduciary duty and conspiracy pending judgment resolution of § 10(b) and Rule 10b–5 claims by federal district court); *Macchiavelli v. Shearson, Hammill & Co.,* 384 F.Supp. 21 (E.D.Cal.1974) (staying arbitration of claims for breach of contract, violations of Regulation T and unspecified federal rules dealing with credit transactions until conclusion of federal litigation); *Stockwell v. Reynolds & Co.,* 252 F.Supp. 215 (S.D.N.Y. 1965) (staying arbitration of claims for common-law fraud and common-law negligence until completion of federal litigation of § 10(b) and Rule 10b–5 issues); *cf. Miley v. Oppenheimer & Co.,* 637 F.2d 318, 336

---

**16.** Admittedly, a stronger argument can be made for applying the doctrine of intertwining to actions arising under the Exchange Act of 1934 than the Securities Act of 1933, since the federal district court has exclusive jurisdiction over violations of the former and only concurrent jurisdiction in the latter case. However, this distinction obscures the thrust of the intertwining doctrine which, when read together with the *Wilko* doctrine, is to preserve an investor's *right* to select a judicial forum to resolve a securities dispute.

(5th Cir.1981); [17] *Lee v. Ply\*Gem Industries*, 593 F.2d 1266, 1274–75 & n. 67 (D.C. Cir.1979), *cert. denied*, 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979) (staying arbitration of common law counts for fraud, breach of contract and breach of fiduciary duty pending judgment resolution of antitrust claims by federal district court); *Applied Digital Technology, Inc. v. Continental Casualty Co.*, 576 F.2d 116 (7th Cir.1978) (staying arbitration of claims for breach of contract, breach of warranty and tortious interference with contract pending completion of antitrust litigation).

In *Raiford v. Buslease Inc.*, at 1423 n. 5 (11th Cir. No. 9, 1984), the Eleventh Circuit expressly declined to review the question whether the doctrine of intertwining applies to a situation where the court orders arbitration of the nonfederal claims, and then stays the arbitration until after judgment resolution of the federal claims by the federal district court. As is explained below, this procedure differs significantly from one in which the court stays the entire proceedings pending arbitration or stays only the proceedings as to the nonfederal claims pending arbitration, and it is those procedural differences which obviate the need for the intertwining doctrine.

Determination of whether the doctrine of intertwining applies in this case requires a return to its twin policies: protection of the federal court's jurisdiction and prevention of costly, inefficient procedures.

Severing the arbitrable claims and litigating the nonarbitrable federal claims first poses no threat to a federal district court's jurisdiction over federal securities matters. By ordering the claims to be resolved in this manner, the federal court eliminates the risk that arbitration will have a collateral estoppel effect upon judicial resolution of securities law claims because arbitration of all suitable claims occurs *after* trial of the federal securities claims. On this basis alone, the Eleventh Circuit in *Raiford* hinted that the intertwining doctrine does not apply to stays of nonfederal proceedings pending conclusion of the federal litigation. At 1423 n. 7. The Seventh Circuit reached the same result in *Dickinson*.

> Where the non-arbitrable issues substantially permeate the entire case and make it difficult to separate out the arbitrable issues, the district court has discretion to stay arbitration pending a judicial resolution of the non-arbitrable claims.[18] By controlling the order of the two adjudications, a procedure certainly within the power of the ... court, the district court can preserve its full authority to decide the non-arbitrable federal issues without any collateral estoppel consequences from a prior arbitration.

**17.** ... *Miley* did not decide the precise issue we have here; *i.e.*, whether to sever the arbitrable claims but stay arbitration pending judicial resolution of the federal claims. The *Miley* court noted that the defendant in that case "never moved in the district court to have the pendent state claims severed and to stay the arbitration pending the completion of the federal trial. Rather, Oppenheimer (defendant) moved only to dismiss the federal claim or, alternatively to stay the federal trial until completion of the arbitration. 637 F.2d at 336 n. 15. There is also *dicta* in the *Miley* case which tend to support [defendant's] position:

> Oppenheimer has raised on appeal one possible scenario which would preserve the exclusive federal jurisdiction by allowing the federal trial to proceed while the arbitration of the state claim was stayed. Their contention is not without merit; and indeed, there is a strong argument in favor of requiring the judge in a churning case, upon the motion of either party, to instruct the jury that if they do not find a violation of the federal securities laws, they should not reach the issue of whether a breach of fiduciary duty was committed. In such cases, the parties have a right, if they so desire, to have an arbitrator decide whether there was sufficient misconduct to violate the fiduciary duty standard, even though the misconduct did not constitute "willful and reckless excessive trading of an account designed to generate fees." *Id.* at 336 (footnote omitted).

*Liskey*, 717 F.2d at 317 n. 7 (quoting *Miley*, 636 F.2d 318).

**18.** "The district court ... has the right to decide whether plaintiff's arbitrable and nonarbitrable claims are severable. Indeed, the district court is obligated to make this determination." *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1026 (11th Cir.1982)

661 F.2d at 644 (citations omitted) (footnote added).

At least one court has expressed doubt whether Congress intended for section 3 of the Federal Arbitration Act to be used for bifurcated proceedings of the sort contemplated by this court. *See Cunningham v. Dean Witter Reynolds, Inc.,* 550 F.Supp. 578 (E.D.Cal.1982). *Cunningham* submits that Congress intended the Arbitration Act to overrule the traditional refusal of courts to enforce arbitration agreements under the common law.[19] Section 3 simply may not apply to cases in which only portions of otherwise arbitrable claims are submitted to arbitration.

The remaining justification for the intertwining doctrine is efficiency. Admittedly, some duplication of effort occurs when federal claims are litigated first followed by arbitration of state and common-law actions. But the necessary evils caused by arbitrating before or during the federal proceeding are largely eliminated by severing the federal claims and litigating them before arbitration of the remaining state claims. Recall that according to the *Wilko* Court, one problem with arbitration is that the record may neither be sufficiently developed nor the arbitrator's reasoning clear. *See supra* p. 645–646. These difficulties may be avoided where the federal securities law claims are litigated before arbitration, since the rules of discovery and evidence allow the parties to develop a more detailed and accurate record, and either specific findings of fact in a bench trial or a special verdict in a jury trial may "obviate much of the duplication of proofs 'through the impact of collateral estoppel on the subsequent arbitration.'" *Liskey,* 717 F.2d at 318 (quoting *Dickin-*

*son,* 661 F.2d at 644). The parties may also be able to use the factual record or evidence gathered in the federal case during the arbitration, thereby reducing duplication and promoting efficiency. Additionally, "plaintiffs who prevail in federal court may have no need to pursue their arbitrable claims because they will have already recovered their damages[,] ... [o]r they may even settle those claims based upon the facts developed at their federal trials." *Dickinson,* 661 F.2d at 644. In sum, ordering arbitration of the nonfederal claims, and then staying arbitration until after judgment resolution of the federal claims by the court, avoids "a race to final decision ... between federal judicial proceedings and arbitration, with attendant undesirable consequences." *Raiford,* at 1422.

■ The court thus finds that the doctrine of intertwining does not apply where arbitration of the non-federal claims are stayed pending judgment resolution of the federal securities claims by the district court. The doctrine only applies in specific procedural circumstances which, significantly, are absent in this case.

The court reaches this decision with some reluctance because its result prevents arbitration of federal securities claims which, as a matter of social policy and judicial efficiency, would be desirable. As an inferior court, however, this tribunal is required to abide by the decisions of the Supreme Court and the circuit courts. To that extent, the clear majority of those courts that have considered the intertwining doctrine have looked upon it with favor; many of these courts also have approved of the procedures adopted by this court in the instant case.

---

19. Congress intended the Act to eliminate "an anachronism in our law" arising from the efforts of jealous English courts to protect their jurisdiction. H.R.Rep. No. 96, 68th Cong., 1st Sess., 1 (1924). The problem Congress intended to rectify was that essentially *no* arbitration agreements could be enforced in a court of law: "With this as the state of the law such agreements were in large part ineffectual and the party aggrieved by the refusal of the other party to carry out the arbitration agreement was without adequate remedy." S.Rep. No. 536, 68th Cong., 1st Sess., 2 (1924). It by no means follows that Congress, in making arbitration agreements enforceable in court, intended that *all* such agreements be blindly enforced whatever the attendant circumstances. *Cunningham,* 550 F.Supp. at 583; *see also Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 510 n. 4, 94 S.Ct. 2449, 2453 n. 4, 41 L.Ed.2d 270 (1974).

■ Accordingly, the court grants defendants' motion to compel arbitration, and further orders that arbitration be stayed pending judgment resolution of the nonarbitrable claims by the district court.

## IV.

The remaining task before the court is to determine which among the issues presented shall be litigated and which shall be subject to arbitration.

The preceding recitation of case law makes clear that plaintiff's federal securities claims are to be adjudicated by the federal district court.

Plaintiff's common-law claims, which could come before this court under the doctrine of pendent jurisdiction, *see United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), shall be resolved by arbitration upon completion of the federal proceedings because there exists neither contractual nor jurisdictional impediments to this process; and because consideration of both federal statutory and common-law securities claims could prove difficult owing to the subtle and significant differences in the proofs required and the legal standards employed. *See Stowell v. Ted S. Finkle Investment Service, Inc.*, 489 F.Supp. 1209, 1217–18 (S.D.Fla.1980), *aff'd*, 641 F.2d 323 (5th Cir.1981).

Whether plaintiff's state statutory claims can be subjected to arbitration is more problematic. At first blush, the question is simply whether the reasons supporting the court's decision to decline to exercise pendent jurisdiction over plaintiff's common-law claims also apply to plaintiff's state statutory actions. Of this the court is certain, for plaintiff's state claims threaten to create the same sort of confusion as their common-law counterparts. *See Stowell, supra; see United Mine Workers*, 383 U.S. at 727, 86 S.Ct. at 1139–40.

Complicating the situation, however, is the Supreme Court of Florida's decision that claims arising under the Florida Securities Act, Fla.Stat.Ann. § 517.011 et seq. (West 1984), cannot be arbitrated. *Oppenheimer & Co. v. Young*, 456 So.2d 1175 (Fla.1984). The *Oppenheimer* court reasoned

that it was the intent of the legislature, in enacting the Florida Securities Act, to rely on federal laws and enforcement efforts in the securities field and to cooperate with those efforts in formulating Florida law.... Thus, we agree with the district court that we should follow *Wilko v. Swan*, 346 U.S. 427 [74 S.Ct. 182, 98 L.Ed. 168] (1953) in holding that an arbitration agreement concerning disputes in securities is unenforceable.

*Id.* at 1175.

The operative issue in the wake of *Oppenheimer* is whether a federal district court sitting in Florida and exercising federal question jurisdiction must follow a decision of Florida's highest court which uses federal law to interpret a Florida statute? The court answers no.

■ Section 1331(a) of Title 28 of the United States Code provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the ... laws ... of the United States." Congress has the power to give the federal courts exclusive jurisdiction of matters falling within the judicial power of the United States, *see Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 507–08, 82 S.Ct. 519, 523, 7 L.Ed.2d 483 (1962); *Claflin v. Houseman*, 93 U.S. 130, 23 L.Ed. 833 (1876), but has chosen not to do so in matters involving the Securities Act of 1933. Accordingly, state courts have concurrent jurisdiction with the federal courts over federal securities claims; a state court may entertain an action even though it is entirely based on a federal issue. *See generally* C. Wright, Law of Federal Courts § 45, at 193 & n. 3 (3rd ed. 1976).

■ Although state courts may resolve issues arising under the federal securities laws, both the Supremacy Clause and the strong federal interest in the uniform application of federal law require the state court to apply federal law. If a state court could create its own brand of federal law, then there would exist parallel but incon-

sistent interpretations of the same federal statute. Besides being repugnant to the notion that federal law occupies the field of federal securities regulation, this situation would promote forum shopping in the most blatant manner. In matters where there exists an equally applicable state rule, the federal court should adhere to the federal rule if "the rights of the litigants and the operative legal policies derive from a federal source." *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981) (state law does not provide rule of decision governing Title VII settlement agreement); *see Sola Electric Co. v. Jefferson Electric Co.*, 317 U.S. 173, 176, 63 S.Ct. 172, 174, 87 L.Ed. 165 (1942). For these reasons, federal courts are not bound by decisions of a state's highest court on matters of federal law. *See id.; Standard Oil Co. v. Johnson*, 316 U.S. 481, 483, 62 S.Ct. 1168, 1169, 86 L.Ed. 1611 (1942).

The *Oppenheimer* court's interpretation of the Florida Securities Act was based on the court's own reading of both the Securities Act of 1933 and the Supreme Court's decision in *Wilko v. Swan*. While the Florida supreme court may engage in this analysis, a federal district court sitting in the State need not adhere to that decision, especially if it strays from its own interpretation of federal law. As explained earlier, this court is neither certain that Congress intended for section 14 of the 1933 Act and section 29(a) of the 1934 Act to supersede section 2 of the Federal Arbitration Act, nor that sections 14 and 29(a) standing alone ban all arbitration of securities claims. Justice Shaw conceded as much in the *Oppenheimer* opinion.[20] Moreover, the majority of federal circuit and district courts that have taken up the intertwining doctrine and its related concepts have not completely banned arbitration of state securities claims. To the extent that *Oppenheimer*

misconstrues federal law, it is of no precedential value to this court.

 Thus, it is the decision of this court not to exercise pendent jurisdiction over plaintiff's state claims, and to compel arbitration of those issues after completion of plaintiff's federal litigation; the *Oppenheimer* opinion is not controlling in this case.

## V.

In summary, Counts 3, 4, 5 and 6 of plaintiff's complaint shall be subject to arbitration. The arbitration proceedings shall not commence, however, until judgment resolution of Counts 1 and 2 of plaintiff's complaint by this court.

---

**20.** Petitioner suggests that the *Wilko* decision would be different were it decided today. We are aware of the increased interest in finding alternatives to judicial litigation and that arbitration is a suitable method of resolving many disputes. Rehnquist, *A Jurist's View of Arbitration*, 32 Arb.J. 1 (1977). If the Court were to recede from *Wilko* by holding that arbitration agreements could be enforced to resolve disputes concerning interstate securities transactions, our decision would be different. 456 So.2d at 1178 n. 6.